ANDREA E. BATES, ESQ. SBN 192491
Abates@Bates-bates.com
BATES & BATES, LLC
964 DeKalb Avenue, Suite 101
Atlanta, Georgia 30307
Phone: (404) 228-7439
Fax: (404) 963-6231

Attorneys for Plaintiff
E.I. Du Pont de Nemours and Company

JS-6

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, a Delaware corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>STEVEN A. DRABEK, an individual, doing business as SCIENTIFIC EQUIPMENT OF HOUSTON, and DOES 1 through 10.<br><br>  Defendants. | CASE NO. CV 12-10574 DDP (AJWx)<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT AND A PERMANENT INJUNCTION AGAINST DEFENDANT STEVEN A. DRABEK, AN INDIVIDUAL, DOING BUSINESS AS SCIENTIFIC EQUIPMENT OF HOUSTON**<br><br>THE HON. DEAN D. PREGERSON |

Before the Court is Plaintiff E.I. DU PONT DE NEMOURS AND COMPANY'S ("DuPont") Application for Default Judgment and Permanent Injunction. The Court finds that DuPont has demonstrated that default judgment is appropriate in this case and GRANTS the Application for Default Judgment and Permanent Injunction.

# I. BACKGROUND

## A. Facts

The following facts are set forth in the Complaint: DuPont is a Delaware corporation with a principal place of business at 1007 Market Street, Wilmington, Delaware 19898. [Complaint at ¶ 2.] DuPont is a science company engaged in the development, manufacture, sale and distribution of a wide variety of products and ingredients in the United States and throughout the world. [*Id.* at ¶ 3.] DuPont is informed and believes, and based thereon alleges, that Defendant Steven A. Drabek is an individual with an address of 24201 FM 2154 Rd, Navasota, Texas 77868. [*Id.* at ¶ 3.] DuPont is informed and believes, and based thereon alleges, that Defendant Steven A. Drabek is doing business as Scientific Equipment of Houston, which is engaged in the promotion and sale of various products in the United States, including in this District, at its business location and through its websites at http://www.labmiser.com and http://www.agile-fx.com. [*Id.* at ¶ 3.]

In the late 1930's, DuPont discovered a method to polymerize tetrafluoroethylene to form a fluoropolymer compound known as polytetrafluoroethylene ("PTFE"). [*Id.* at ¶ 10.] PTFE is both slippery and chemically inert making it useful in a wide variety of different products. [*Id.*] In approximately 1944, DuPont adopted and began to use the name and mark TEFLON® ("TEFLON® Mark") for its PTFE products and began to sell

TEFLON® brand PTFE directly to manufacturers and others for use in a wide variety of products. [*Id.* at ¶ 11.] DuPont alleges that the TEFLON® Mark is fanciful. [*Id.*]

DuPont TEFLON® fluoropolymer products have been a commercial success. [*Id.*] Since 1944, DuPont has generated millions of dollars in revenue from the sale of TEFLON® products and the licensing of the TEFLON® Mark. [*Id.*] DuPont and its related companies have spent millions of dollars in the advertising and promotion of the TEFLON® Mark and the products sold under the TEFLON® Mark. [*Id.* at ¶ 12.]

As a result of the quality of the DuPont TEFLON® fluoropolymer products and the extensive sales, licensing and marketing, advertising and promotion of these products under the TEFLON® Mark by DuPont and its related companies, DuPont alleges the TEFLON® Mark has become a famous trademark that is widely and favorably known by consumers in the United States and elsewhere as designating high quality and dependable products originating exclusively from DuPont and its related companies. [*Id.* at ¶ 13.]

DuPont alleges it is the exclusive owner of a number of United States Trademark Registrations for the TEFLON® Mark for a variety of products and ingredients dating back to 1946. These include: (a) Reg. No. 0,418,698 for the mark TEFLON® for "synthetic resinous fluorine-containing polymers in the form of molding and extruding compositions, fabricated shapes - namely, sheets, tubes, tape and filaments, and emulsions;" (b) Reg. No. 0,559,331 for TEFLON® for "polytetrafluoroethylene coatings in the nature of paints and varnishes;" (c) Reg. No. 0,623,605 for TEFLON® for "fibers and filaments in the nature of

threads and yarns adapted to be used in making fabrics;" (d) Reg. No. 0,676,166 for TEFLON® for "films or sheets made from polymers of fluorinated hydrocarbons for use in packaging applications, in electrical and non-electrical insulation, as protective liners for containers and equipment, in tapes, in machinery parts, in covering, coating, and packing substances, in hose and piping, and for general use in the industrial arts;" (e) Reg. No. 0,827,105 for TEFLON® for "coatings in the nature of paint, based on fluorine-containing resins;" (f) Reg. No. 0,835,374 for TEFLON–S® for "stratified non-stick and self-lubricating finishes for use as industrial and consumer product coatings for bearings, idler rolls, ceramic resistors, hand saws, lawn and garden tools, and the like;" (g) Reg. No. 1,111,147 for TEFLON® for "chemical compound in the nature of a textile finish with oil, water, and stain repellant characteristics;" (h) Reg. No. 1,592,650 for TEFLON® for "fluorine-containing polymers in resin and dispersion form for use as additives in inks, plastics, lubricants, coating, and other host materials where attributes such as lubricity, friction reduction, nonstick, and temperature and chemical resistance are desired;" (i) Reg. No. 2,601,355 for TEFLON® for "windshield wiper blades;" and (j) Reg. No. 3,206,677 for TEFLON® for "cleaning preparations, shampoos, wax and polish for automobiles". [*Id.* at ¶ 15.]

DuPont is informed and believes, and based thereon alleges, that Defendant manufactures and sells a variety of lab equipment products for life science, chemical and diagnostics research markets. [*Id.* at ¶ 18.] DuPont is informed and believes, and based

thereon alleges, that Defendant offers for sale and sells some products in connection with the TEFLON® Mark that do not contain genuine DuPont TEFLON® fluoropolymer or otherwise are not authorized to be sold under the TEFLON® Mark ("Scientific Equipment of Houston Unauthorized Products"). [*Id.* at ¶ 19.] DuPont is informed and believes, and based thereon alleges, that Defendant has manufactured, advertised, and sold the Scientific Equipment of Houston Unauthorized Products on its Internet websites with the intent of misappropriating, for its own benefit, the tremendous goodwill built up by DuPont in the TEFLON® Mark. [*Id.* at ¶ 20.]

DuPont alleges that Defendant's unauthorized use of the TEFLON® Mark was intended to cause, has caused, and is likely to continue to cause consumer confusion; that it is damaging the reputation and goodwill of TEFLON® Mark; and that it is causing irreparable harm to DuPont. [*Id.* at ¶ 25-26.] DuPont alleges that Defendant's use of the TEFLON® Mark constitutes willful, deliberate and intentional infringement of DuPont's federally registered trademarks for the TEFLON® Mark in violation of § 32(1) of the Lanham Act (15 U.S.C. § 1114(1)). [*Id.* at ¶ 30.]

As presently before the Court is Plaintiff's Application of Entry of Default Judgment, the Court must accept the above allegations as true.

### B. Procedural Posture

On December 10, 2012, DuPont filed its Complaint against Defendant for: (1) Trademark Infringement; (2) Trademark Counterfeiting; (3) False Designation of

Origin and Unfair Competition Under the United States Trademark Act; (4) False Description of Fact and Representations and False Advertising Under the United States Trademark Act; (5) Trademark Dilution Under the United States Trademark Act; (6) Trademark Dilution Under California State Law; (7) Unfair Competition in Violation of California Business & Professions Code § 17200; (8) Common Law Trademark Infringement and Unfair Competition; (9) California Trademark Infringement, Dilution and Deceptive Acts and Practices; and (10) Accounting.

On December12, 2012, DuPont perfected service of the Summons and Complaint upon Defendant in Compliance with the Federal Rules of Civil Procedure, as evidence by the Proof of Service that was filed with this Court on December 18, 2012, and attached as Exhibit "A" to the Declaration of Andrea E. Bates ("Bates Decl."). [*See* Bates Decl. at ¶ 2.] As Defendant failed to file an Answer or otherwise respond to the Complaint, Plaintiff filed its Request for Entry of Default with the Clerk on February 11, 2013. [*See* Bates Decl. at ¶ 3.] Subsequently, the Clerk entered a default against Defendant on February 12, 2013. [*See* Bates Decl. at ¶ 4.]

On February 11, 2012 Plaintiff filed an Application for Default Judgment and Permanent Injunction against Defendant and a Memorandum of Points and Authorities in Support of Application for Default Judgment and Permanent Injunction. Plaintiff also submitted the Declaration of Andrea. E. Bates, Esq. in Support of the Application, which

states, *inter alia*, that Defendant continues its infringing conduct as of the date of the Application. [*See* Bates Decl.] That application is presently before the Court.

## II. LEGAL STANDARD

Rule 55(b)(2) of the Federal Rules of Civil Procedure requires the plaintiff to apply to a court for a default judgment in all cases where the requirements for a clerk-entered default judgment cannot be met. *See* Fed. R. Civ. P. 55(b)(2). An Applicant must apply to a court for a default judgment where: (1) the claim is for an amount that is not certain or capable of being made certain by computation; (2) the defendant, although in default, has appeared in the action; (3) the defendant is a minor or incompetent; or (4) the defendant is in military service or is the United States. *See* Fed. R. Civ. P. 55(b) (2).

Local Rule 55–1 requires that a motion for default judgment be accompanied by a declaration that includes:

> (a) When and against what party the default was entered; (b) [t]he identification of the pleading to which default was entered; (c) [w]hether the defaulting party is an infant or incompetent person ... (d) [t]hat the Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply; and (e) [t]hat notice has been served on the defaulting party, if required by [Federal Rule of Civil Procedure] 55(b)(2).

C.D. Cal. R. 55–1.

"Rule 55(b)(2) requires service on the defaulting party only if that party has appeared in the action." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp.2d 916, 919, fn. 19 (C.D.Cal. 2010).

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Ninth Circuit directs a district court to consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III.    DISCUSSION

### A.    Plaintiff Has Satisfied Local Rule 55–1

Plaintiff's declaration satisfies Local Rule 55–1.  [*See* Bates Decl.]  On December 12, 2012, DuPont perfected service of the Summons and Complaint upon Defendant in Compliance with the Federal Rules of Civil Procedure, as evidence by the Proof of Service that was filed with this Court on December 18, 2012, and attached as Exhibit "A" to the Bates Decl.

As Defendant failed to file an Answer or otherwise respond to the Complaint, Plaintiff filed its Request for Entry of Default with the Clerk on February 11, 2013. [*See* Bates Decl. at 3.]  Subsequently, the Clerk entered a default against Defendant on February 12, 2013.  [*See* Bates Decl. at 4.]  Defendant is not an infant or incompetent person or in military service or otherwise exempted under the Soldiers' and Sailors' Civil

Relief Act of 1940. [*See* Bates Decl. at 6.] Plaintiff declares Defendant never appeared in this action; therefore, a notice of application for default judgment is not required by Federal Rule of Civil Procedure 55(b)(2). Plaintiff, however, provided notice on February 15, 2013, of this Application on Defendant. [*See* Bates Decl. at ¶ 8.] Accordingly, Plaintiff's declaration satisfies the requirement of Local Rule. 55-1.

### B. *Eitel* Factors Weigh in Favor of Entry of Default Judgment

Upon consideration of the *Eitel* factors, the Court concludes that the factors weigh in favor of default judgment.

#### 1. Possibility of Prejudice to the Plaintiff

"The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered." *Landstar Ranger*, 725 F. Supp.2d at 920. A plaintiff suffers prejudice when denying default judgment would leave plaintiff without a remedy. *Id.* Defendant has infringed upon Plaintiff's trademarks resulting in damage to Plaintiff's business and reputation. [Complaint at ¶ 26.] Without default judgment, Plaintiff will be left with no recourse to enforce its intellectual property rights. Therefore, as Plaintiff would suffer prejudice if default judgment were denied, the Court concludes that this factor favors default judgment.

#### 2. & 3. Merits and Sufficiency of Plaintiff's Substantive Claims

"The second and third *Eitel* factors assess the substantive merit of plaintiff's claim and the sufficiency of its pleadings." *Landstar Ranger*, 725 F. Supp.2d at 920. To

warrant default judgment, the allegations in the Complaint must be sufficient to state a claim upon which Plaintiff can recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Plaintiff asserts a claim for federal trademark infringement.[1] To state a trademark infringement claim, a Plaintiff must plead: "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon [plaintiff's] rights to the mark." *Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

Plaintiff alleges that, in 1944, it adopted and began to use the fanciful name and mark TEFLON® ("TEFLON® mark") for its PTFE products and began to sell TEFLON® brand PTFE directly to manufacturers and others for use in a wide variety of products. [Compl. at ¶ 11.] Plaintiff alleges that it is the exclusive owner of a number of United States Trademark Registrations for the TEFLON® mark for a variety of products and ingredients dating back to 1946. [Compl. at ¶ 15.] Plaintiff alleges that the TEFLON® mark has become a famous trademark that is widely and favorably known by consumers in the United States and elsewhere as designating high quality and dependable products originating exclusively from Plaintiff and its related companies. [*Id*. at ¶ 16.] Plaintiff has

---

[1] Plaintiff also asserted claims for Trademark Counterfeiting, False Designation of Origin and Unfair Competition, False Description of Fact and Representations, Trademark Dilution under the United States Trademark Act, Trademark Dilution Under California State Law, Unfair Competition in Violation of California Business & Professions Code § 17200, Common Law Trademark Infringement and Unfair Competition, California Trademark Infringement, Dilution and Deceptive Acts and Practices , and Accounting. (Compl.)  As Plaintiff's Application for Default Judgment seeks damages only as to Plaintiff's trademark claim, the Court only considers the trademark infringement claim. [Appl. for Default J. at 8.]

used the TEFLON® Mark for over seventy (70) years and invested millions of dollars in advertising, promoting, and marketing its products under the TEFLON® Mark. [*Id.* ¶¶ 10, 16.]

Defendant has infringed upon Plaintiff's marks by manufacturing, advertising, distributing, and selling merchandise bearing Plaintiff's marks, or marks that are substantially indistinguishable from Plaintiff's marks. [*Id.* ¶¶ 19- 23.] Defendant's actions are likely to cause consumer confusion and have caused damage to Plaintiff's business and reputation. [*Id.* ¶¶ 25-26.] Accepting these factual allegations as true, as the court must in deciding an application for default judgment, Plaintiff has sufficiently pleaded a claim for trademark infringement, and

### 4.      **Sum of Money at Stake in the Action**

"The fourth *Eitel* factor examines the amount of money at stake in relation to the seriousness of a defendant's conduct." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp.2d 1039, 1060 (N.D.Cal. 2010). Plaintiff seeks injunctive relief against further infringement by Defendant and statutory damages of $2,000,000.00 pursuant to 15 U.S.C. § 1117(c)(2).[2]  [Appl. for Default J. at 9.] The amount of money sought by Plaintiff is consistent with the allegations in the Complaint and the claim asserted. *See* 15 U.S.C. § 1117(c)(2) (providing statutory damages of "not more than $2,000,000 per

---

[2] Plaintiff, in the Complaint, also sought actual, compensatory, and punitive damages; accounting and disgorgement; and costs, interest, and attorney fees. [Compl. at pp. 12-13, ¶¶ 1–17.] In the Application for Default Judgment, Plaintiff is seeking only a permanent injunction, $2,000,000.00 in statutory damages, and costs. [Appl. For Default J. at 10.]

counterfeit mark" if the court "finds that the use of the counterfeit mark was willful"); *Craigslist*, 694 F. Supp.2d at 1060 (holding that this factor weighed in favor of default judgment where plaintiff asserted copyright, trademark, breach of contract, and fraud claims and sought damages in the range of $1,177,827.07 to $4,900,327.07). Accordingly, this factor weighs in favor of default judgment.

### 5. Possibility of a Dispute Concerning Material Facts

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Craigslist*, 694 F.Supp.2d at 1060. Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote. *See, e.g., Landstar Ranger, 725 F.Supp.2d at 921-22* ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the Complaint, no factual disputes exist that preclude the entry of default judgment."). As Plaintiff filed a well-pleaded Complaint, this factor weighs in favor of default judgment.

### 6. Whether the Default Was Due to Excusable Neglect

"The sixth *Eitel* factor considers whether defendant's default may have been the product of excusable neglect." *Landstar Ranger*, 725 F. Supp.2d at 922. This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Id.* (concluding that this factor favored default judgment and "possibility of excusable neglect is remote" where defendant

had been properly served); *Craigslist*, 694 F.Supp.2d at 1061 ("Plaintiff has proffered evidence showing Defendants were clearly aware of the pending litigation."). Here, Defendant was properly served but apparently chose not to participate in this litigation; thus, default did not occur because of excusable neglect. [*See* Proof of Service attached as Exhibit A to Bates Decl.]

### 7. Strong Policy Favoring Decisions on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craigslist*, 694 F.Supp.2d at 1061. Although, "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, "Rule 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar Ranger*, 725 F.Supp.2d at 922. Notwithstanding the strong policy presumption in favor of a decision on the merits, where a defendant fails to appear and respond as occurred here, a decision on the merits is impossible and default judgment is appropriate. *See Craigslist*, 694 F.Supp.2d at 1061. Thus, this factor weighs in favor of default judgment.

## C. Remedies

Plaintiff seeks injunctive relief against further infringement by Defendant, statutory damages of $2,000,000.00, and costs. The Court considers each in turn and holds that Plaintiff is entitled to injunctive relief, damages, and costs.

### 1.  Injunctive Relief

Plaintiff seeks injunctive relief to permanently enjoin Defendant from using Plaintiff's marks in connection with the sale and offer for sale of infringing products. [Appl. for Default J. at 9.]  Injunctions are authorized for trademark infringement pursuant to 15 U.S.C. § 1116(a).  *See Craigslist*, 694 F.Supp.2d at 1061-62 (granting injunction based upon trademark infringement claims).  A permanent injunction based upon a trademark infringement action is appropriate where it is not "absolutely clear" that a defendant's infringing activities have ceased and will not begin again.  *Pepsi Co,* 238 F.Supp.2d at 1177–78 (granting permanent injunction despite limited evidence from plaintiff regarding the risk of future infringement by the defendant).

As discussed above, Plaintiff has established that it is entitled to judgment on its trademark infringement claim.  Given Defendant's failure to defend against this lawsuit and Plaintiff's evidence that Defendant's infringement continued even after the filing of this lawsuit (Bates Decl. ¶ 9), there is no indication that Defendant has or will terminate its infringing activities.  Accordingly, the Court permanently enjoins Defendant from using Plaintiff's marks in connection with the sale and offer for sale of infringing products.

### 2.  Damages

Plaintiff seeks $2,000.000.00 in statutory damages.  [Appl. for Default J. at 9.] Because Defendant has refused to participate in this case, Plaintiff argues that

ascertainment of Defendant's profits is impossible and asks the Court to impose statutory damages pursuant to 15 U.S.C. § 1117(c), which states:

> [T]he plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

Plaintiff argues that Defendant's actions were willful and therefore subject to 15 U.S.C. § 1117(c). "Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with an aura of indifference to plaintiff's rights—in other words, that the defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it." *Philip Morris USA Inc. v. Liu*, 489 F. Supp.2d 1119, 1123 (C.D.Cal.2007) (internal quotation marks and citation omitted).

Here, Plaintiff alleges that Defendant "acts constitute willful, deliberate and intentional infringement of Plaintiff's federally registered trademarks for the TEFLON® mark in violation of § 32 (1) of the Lanham Act (15 U.S.C. § 1114(1))."

[*See* Complaint at ¶ 30.]  An allegation of willful trademark infringement is deemed true on default. *Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696, 698 (9th Cir. 2008). Furthermore, after Plaintiff filed this lawsuit, Defendant continued to infringe upon Plaintiff's marks. [Bates Decl. ¶ 9.]  Accordingly, the Court holds that Defendant's infringement upon Plaintiff's marks was willful.

District courts have discretion in determining the amount of statutory damages, subject only to the statutory minimum and maximum.  15 U.S.C. § 1117(c)(1) (providing for a minimum of $1,000 and a maximum of $200,000 "as the court considers just"); *see Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir. 1984) (interpreting 17 U.S.C. § 504(c), a similarly-worded copyright infringement provision, and concluding that district courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.").

A finding of willfulness subjects a defendant to an enhanced statutory maximum of $2,000,000.00. 15 U.S.C. § 1117(c)(2).  In *Philip Morris,* a district court awarded the statutory maximum of $1,000,000 for each of two separate trademark infringements by the defendant, for a total award of $2,000,000.00 where the defendant transported and unloaded counterfeit cigarettes and was willfully ignorant that the cigarettes infringed upon plaintiff's trademark.[3]  *Philip Morris*, 489 F.Supp.2d at 1122-24.

---

[3] The statutory maximum provided for in 15 U.S.C. § 1117(c)(2) was doubled in 2008 from $1,000,000.00 to $2,000,000.00. Prioritizing Resources and Organization for Intellectual Property Act of 2008, PL 110-403 (Oct. 13, 2008).

Although Defendant's infringement of Plaintiff's trademark appears to be willful, the court declines to award $2,000,000 in statutory damages. Plaintiff has presented no evidence regarding the extent of sales and no evidence that Defendant sold infringing products to a wide market. Infringing products on Defendant's website range in price from $1.50 to $178.33. The court awards damages in the amount of $25,000 per infringing product. Plaintiff has provided evidence of 21 different products bearing Plaintiff's TEFLON Mark. (Supplemental Decl. of Daniel J. Beitey in Support of Plaintiff's Application for Default Judgment and a Permanent Injunction ¶ 5, Exh. C.) Thus, in total, the court awards damages to Plaintiff in the amount of $525,000.

### 3. Costs

A plaintiff is entitled to recover "costs of the action" in trademark infringement actions. 15 U.S.C. § 1117(a)(3). Based upon Defendant's conduct in this case and the Court's conclusion that Defendants' actions were willful, the Court holds that Plaintiff is entitled to recover its costs incurred in bringing this action. *See* 15 U.S.C. § 1117(a). Plaintiff is to file a bill of costs following entry of default judgment. *See* C.D. Cal. L.R. 54–3.

## IV.   CONCLUSION

For the reasons set forth, the Court GRANTS Plaintiff's Application for Default Judgment and Permanent Injunction against Defendant Steven A. Drabek, an individual,

doing business as Scientific Equipment of Houston.  Plaintiff shall submit its bill of costs within fifteen days of entry of this order.

**IT IS SO ORDERED**

Dated:  May 03, 2013

_____
DEAN D. PREGERSON
United States District Judge